UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALAN P. CRIPPS,

                         Plaintiff,      **No. 6:15-cv-06697(MAT)**
                                                        **DECISION AND ORDER**
        -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                         Defendant.
_____

**INTRODUCTION**

Represented by counsel, Alan P. Cripps ("Plaintiff") brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Disability Insurance Benefits ("DIB"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

**BACKGROUND**

**I.  Procedural Status**

Plaintiff filed an application for DIB on October 2, 2012, alleging disability beginning January 1, 2012, due to osteochondritis of the left knee with arthritis, spondylolisthesis in the lower back, left leg numbness, left hip pain, herniated discs in the cervical spine, left arm numbness, chronic sinus problems, bilateral carpel tunnel syndrome, and temporomandibular

joint disease. T.205-15.[1] After this application was denied, Plaintiff requested a hearing, which was held on December 16, 2014, before administrative law judge John Costello ("the ALJ"). See T.24-63. Plaintiff testified, as did impartial vocational expert Carol McManus ("the VE"). In correspondence submitted by his attorney on the hearing date, Plaintiff amended his alleged disability onset date to August 18, 2012. On February 6, 2015, the ALJ issued an unfavorable decision. T.12-18. The Appeals Council denied Plaintiff's request for review on September 18, 2015, making the ALJ's decision the final decision of the Commissioner.

Plaintiff timely commenced this action. The parties have filed cross-motions for judgment on the pleadings and supporting memoranda of law, but neither party has filed a reply brief. For the reasons discussed below, the Commissioner's decision is affirmed.

## II. Summary of Relevant Evidence

### A. Medical Records

In 2004, Plaintiff underwent an MRI which revealed a left foraminal disc herniation at C6-7. Electrodiagnostic studies showed mild to moderate bilateral carpal tunnel syndrome ("CTS") and mild to moderate bilateral ulnar neuropathy at the elbow. Physical therapy was recommended.

---

[1] Citations to "T." refer to pages from the certified transcript of the administrative record, submitted by the Commissioner in connection with her answer to the complaint.

In November 2011, Plaintiff saw his primary care physician, Lori Ferris, M.D., complaining of neck pain and headaches. Dr. Ferris noted that Plaintiff had full extension and rotation in the neck with full motor strength in the upper extremities. Dr. Ferris recommended over the counter ("OTC") pain medications. Plaintiff saw Dr. Ferris in December 2011 and March 2012 for upper respiratory symptoms. Plaintiff did not seek treatment again from Dr. Ferris for back and neck pain until August 2012, when he reported that his knee pain had just started and that his back pain had only been present for three days. He told Dr. Ferris that Ibuprofen provided pain relief. On examination, his knee was tender, but straight leg raising was negative. Plaintiff had full motor strength in both lower extremities. There was tenderness on palpation of the lumbar spine. Dr. Ferris again recommended only Ibuprofen and stated he could perform "activities as tolerated".

On November 9, 2012, physician's assistant ("P.A.") Brian Dillenbeck examined Plaintiff's left knee and noted marked tenderness to palpation along the medial patellar facet. Plaintiff received a steroid injection, a prescription for diclofenac, and home exercises for quadricep strengthening. Imaging of Plaintiff's left knee showed subtle degenerative changes of the patellofermoral joint.

Plaintiff presented to Clifford Everett, M.D., on November 15, 2012, for complaints of neck and right arm numbness, and pain in his back and left leg. Dr. Everett's impression was L4-L5

spondylolisthesis with scoliosis and worsening right leg pain. As "rule out" diagnoses, Dr. Everett listed L4 radiculopathy and neck and right hand numbness and pain, and ulnar neuropathy at the hand versus C7 radiculopathy. Nerve conduction studies performed on November 21, 2012, showed right-sided ulnar neuropathy at the elbow with slowing but without cervical radiculopathy. An MRI of the cervical spine performed on November 26, 2012, showed evidence of degenerative disc disease. An MRI of the lumbar spine revealed degenerative disc disease at all lumbar levels. Plaintiff returned for follow-up with Dr. Everett on December 14, 2012, and was referred to Dr. Addisu Mesfin for his back and Dr. John Elfar for his elbow.

Plaintiff consulted with specialist Dr. Mesfin on January 22, 2013, for his neck and back pain. Plaintiff stated that his back pain had been present for 22 years but had worsened over the past year. He was not attending physical therapy due to lack of finances. About a decade previously, he had declined surgery on his lumbar spine. On examination, Plaintiff had full strength in both the upper and lower extremities. Dr. Mesfin diagnosed Plaintiff with degenerative scoliosis (lumbar region) and spondylolisthesis (grade 1) of L5-S1, and recommended conservative treatment.

On March 7, 2013, Plaintiff underwent a right cubital tunnel release. A June 6, 2013 nerve conduction study of Plaintiff's right arm was normal, and Dr. John Orsini found that Plaintiff's previously observed focal slowing of the ulnar nerve had resolved.

On June 18, 2013, Dr. Elfar stated that Plaintiff was doing well post-surgery and that he should follow up as needed.

Plaintiff presented to Dr. Ferris on May 23, 2013, for completion of a form requested by the Department of Social Services ("DSS"). He informed Dr. Ferris that he was also applying for Social Security disability. T.924. Dr. Ferris completed the DSS form and prescribed a trial of nortripyline at bedtime. Id.

At follow-up appointments with Dr. Mesfin in July and August 2013, Plaintiff was referred to physical therapy for his cervical and lumbar pain. A CT scan of the lumbar spine showed isthmic spondylolisthesis. A nerve conduction study showed bilateral chronic polyradiculopathy. Dr. Mesfin referred Plaintiff to Dr. Everett for lumbar spine injections, which were administered on August 15 and 20, 2013.

Plaintiff returned to Dr. Mesfin on September 24, 2013, reporting that physical therapy and epidural injections had not helped. On examination, Plaintiff was in no distress and had full strength in his lower extremities and intact sensation to light touch at L1-S1.Dr. Mesfin suggested that Plaintiff delay possible surgery until spring of 2014. Plaintiff declined prescriptions for pain medication, and that he took ibuprofen at night. Dr. Mesfin encouraged Plaintiff to continue aerobic exercise and walk at least a mile per day.

In October 2013, Plaintiff saw Dr. Elfar in follow-up regarding his cubital release surgery. Plaintiff reported continued

elbow pain, but less numbness in his fingers. On examination, Plaintiff had good range of motion in his elbow, which was pain free. Dr. Elfar did not recommend further surgery.

On February 21, 2014, Plaintiff returned to Dr. Ferris reporting worsening neck pain and requesting medication. On examination, Plaintiff appeared comfortable but had decreased range of motion and tenderness in his cervical spine. He had full strength in his upper extremities and no paraspinal muscle tenderness or spasms. Dr. Ferris prescribed meloxicam and cyclobenzaprine and recommended physical therapy. Plaintiff declined physical therapy because his symptoms had worsened with physical therapy in the past.

On February 25, 2014, Plaintiff reported that Mobic and Flexeril had improved his neck pain, though he still had right arm pain. He had limited range of motion in his right shoulder, but nearly full extension and flexion in his right elbow. Dr. Ferris assessed likely shoulder tendonitis and referred Plaintiff to physical therapy. Plaintiff was advised to limit lifting, pushing and pulling.

On March 7, 2014, Plaintiff followed up with Dr. Everett and reported that the cyclobenzaprine prescribed by Dr. Ferris had been helpful. Plaintiff's reflexes were normal in his upper extremities and Hoffman's test was negative. Plaintiff had neck pain with extension and rotation. Dr. Everret prescribed diclofenac and

suggested that he continue Flexeril at night. Dr. Everett referred Plaintiff to physical therapy.

In May 2014, Plaintiff reported continued neck pain and occasional right arm symptoms. He reported that physical therapy provided minimal relief. Dr. Mesfin noted that Plaintiff was in no distress and had full strength in his upper extremities and intact sensation at C5 and T1. Spurling's and Romberg's tests were both negative. Dr. Mesfin opined that surgery was unwarranted, and referred Plaintiff to Dr. Ferrero for consideration of trigger point injections.

On June 23, 2014, Plaintiff was evaluated by Dr. Ferrero, who advised Plaintiff to undergo consistent physical therapy prior to consideration of trigger point injections.

In September 2014, Dr. Mesfin referred Plaintiff for physical therapy for his lumbar spine complaints. Plaintiff was in no distress and had full strength in his lower extremities and intact sensation in his lumbosacral spine.

**B.    Consultative Physician's Report**

On December 20, 2012, at the Commissioner's request, Plaintiff underwent a consultative physical examination by Karl Eurenius, M.D. T.606-11. Plaintiff reported that his only medication was Motrin. On examination, Plaintiff had normal gait, full grip strength and muscle strength with no atrophy, normal muscle tone, and normal sensation and reflexes. Dr. Eurenius opined that Plaintiff had "mild" limitations in bending, lifting, carrying,

prolonged standing, walking, and activities requiring frequent movement of the head due to left knee, neck and back pain. T.608-09.

### C.  Plaintiff's Testimony

Plaintiff was 56 years-old on the alleged onset date. He has a college education and some master's level coursework, along with past relevant work as a truck driver, user support analyst section leader, and telephone solicitor. Plaintiff testified that he lives with his father. He attends to his personal grooming daily and cooks daily. He goes shopping on his own and unloads groceries, but "would avoid lifting a 30-40 pound bag of dog food." He also testified that he can clean, mop, and vacuum. He uses a computer daily to browse the Internet or play computer games. He has a driver's license and is able to drive to his appointments. He testified that he can only drive for about 30 minutes before neck pain bothers him. Standing aggravates his back pain but he can stand or sit for one-hour increments before needing to change his position. He also testified he can sit at the computer, using a mouse, for two to three hours before needing to stop due to pain. Plaintiff states he uses muscle relaxers as needed for his pain. Following cubital release surgery, his elbow pain has improved.

### E.  The VE's Testimony

The VE indicated that Plaintiff's past work as a semi-truck driver was classified as "medium" work while his past jobs as a user support analyst section leader and as a telephone solicitor

were "sedentary" work. The ALJ presented the VE with a hypothetical individual of Plaintiff's age, and having his education and work experience, who could perform light exertional work, but who was limited to only frequent reaching, handling, and fingering. The VE testified such an individual could perform Plaintiff's past work as a user support analyst section leader and as a telephone solicitor. T.58.

**F.   The ALJ's Decision**

The ALJ followed the Commissioner's five-step sequential evaluation process for determining whether an individual is disabled. See 20 C.F.R. §§ 404.1520(a) and 416.920(a). At step one, he found that Plaintiff had not engaged in substantial gainful activity since his August 18, 2012 alleged disability onset date. At step two, he found Plaintiff had the following severe impairments: spondylolisthesis; lumbar scoliosis; shoulder tendonitis; and cubital tunnel syndrome. T.14. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. T.15. The ALJ proceeded to assess Plaintiff's residual functional capacity ("RFC") and determined that he can perform "light" work,[2]

---

[2]
"Light" work involves lifting no more than 20 pounds at a time, with frequent lifting or carrying of up to 10 pounds. 20 C.F.R. § 404.1567(b). A job is considered "light" when it requires a good deal of walking or standing (i.e., about six hours in an eight-hour workday), or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b); Social Security Ruling (SSR) 83-10 (also providing that a claimant who is found able to do light work will be able to do sedentary work, absent other limitations).

which requires only frequent reaching, handling, and fingering. T.15. At step four, the ALJ relied on the VE's testimony to find that Plaintiff was able to perform his past relevant work as a user support analyst section leader and telephone solicitor. T.17. The ALJ therefore entered a finding of not disabled.

## STANDARD OF REVIEW

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, a district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971), and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.; see also Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citation omitted).

**DISCUSSION**

Plaintiff's sole contention on appeal relates to the ALJ's failure to explicitly address primary care physician Dr. Ferris' statement from the May 23, 2013 office visit at which Plaintiff presented a form for her to complete for the DSS regarding Plaintiff's ability to work. Under the "SUBJECTIVE" portion of the office note, Dr. Ferris stated, "[Plaintiff] feels unable to perform a job. He is not able to stand or walk for long periods of time. Walking up and down stairs [is] very difficult. Neck pain limits his ability to sit at a desk for long periods of time. . . ." T.924. Dr. Ferris had no "OBJECTIVE" findings that day because an "[e]xam was not done." Id. Under "ASSESSMENT," Dr. Ferris stated, "chronic musculoskeletal symptoms causing permanent partial disability from employment." Id. It bears emphasizing that all of Dr. Ferris' statements regarding Plaintiff's limitations and complaints appear under the "SUBJECTIVE" portion of the treatment note. In other words, what Plaintiff construes as Dr. Ferris' expert opinion regarding his functional limitations is actually a summary of Plaintiff's subjective statements. See, e.g., Polynice v. Colvin, No. 13-4477-cv, 576 F. App'x 28, 31 (2d Cir. Aug. 20, 2014) (summary order) (finding that the ALJ did not improperly deny controlling weight to any treating physician's medical opinion where "[m]uch of what [the claimant] label[ed] 'medical opinion' was no more than a doctor's recording of [the claimant]'s own reports of pain").

Therefore, Plaintiff's suggestion that the ALJ ignored specific opinions from Dr. Ferris regarding his ability to stand, walk, and sit for extended periods of time does not accurately characterize the record. Rather, almost all of what Plaintiff labels as medical opinion is Dr. Ferris' recording of his subjective complaints, as evidenced by the fact those statements appear under the "SUBJECTIVE" heading of the office note. Cf. Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (ALJ did not err in declining to afford controlling weight to treating physician opinion where "the two key findings made by [the treating source]," i.e., "the relatively uninformative response to a multiple-choice question about [the claimant]'s ability to sit" and "the conclusory finding that [the claimant] was unable to perform her previous job duties" "did not 'address the question of whether [she] could do the job if given several breaks or allowed to change position often'"). The only portion of Dr. Ferris' note that arguably constitutes an opinion by a treating source on the "nature and severity of [Plaintiff's] impairment(s)," 20 C.F.R. § 404.1527(c)(2), is Dr. Ferris' statement that Plaintiff has "chronic musculoskeletal symptoms causing permanent partial disability from employment." Not only is this statement conclusory and unsupported by specific findings, it goes to an issued reserved to the Commissioner. See Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (stating that the "ultimate finding of whether a claimant is disabled and cannot work [is] 'reserved to the Commissioner'")

(quoting 20 C.F.R. § 404.1527(e)(1)).  Such opinions on the ultimate issue of disability, even if issued by a treating source, are not entitled to special consideration by an ALJ. See Newbury v. Astrue, 321 F. App'x 16, 17 (2d Cir. 2009) ("To be sure, [the treating source]'s conclusions that [the claimant] was 'disabled' and lacked 'residual functional capacity' are not entitled to controlling weight.") (citing 20 C.F.R. § 404.1527(e)). In sum, Plaintiff has not established that the ALJ committed legal error.

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's determination was not erroneous as a matter of law and was supported by substantial evidence. Accordingly, the Commissioner's determination is affirmed. Defendant's Motion for Judgment on the Pleadings is granted, and Plaintiff's Motion for Judgment on the Pleadings is denied. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

                                            **S/Michael A. Telesca**

                                         HON. MICHAEL A. TELESCA
                                         United States District Judge

Dated:   August 20, 2016
        Rochester, New York.